UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEROME BARNETT,

                            Plaintiff,

      -v-

THE CITY OF YONKERS, DETECTIVE
SULLIVAN; KARL A. SCULLY, ESQ.; and
RICHARD LOGAN, ESQ.

                      Defendants.

No. 15-CV-4013 (KMK)

<u>OPINION & ORDER</u>

Appearances:

Jerome Barnett
Fishkill, NY
*Pro Se Plaintiff*

Rory Carleton McCormick, Esq.
Corporation Counsel, City of Yonkers
Yonkers, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Jerome Barnett ("Plaintiff") brings this Action against the City Of

Yonkers ("Yonkers"), Detective Sullivan ("Sullivan"); Karl A. Scully, Esq. ("Scully"); and

Richard Logan, Esq. ("Logan," and collectively with others, "Defendants"), alleging Defendants

violated his rights under the Fourth and Sixth Amendments to the United States Constitution and

New York state law. (*See* Compl. (Dkt. No. 2).) Plaintiff bring thirteen claims: (1) federal

claims under 42 U.S.C. § 1983 against Yonkers, pursuant to *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 691 (1978); (2) federal claims under § 1983 against Yonkers and Sullivan for false

arrest; (3) federal claims under § 1983 against Yonkers and Sullivan for false imprisonment;

(4) federal claims under § 1983 against Yonkers, Sullivan, Scully, and Logan for malicious prosecution; (5) federal claims under § 1983 against Yonkers, Logan, and Sullivan for due process violations; (6) state law respondeat superior claims against Yonkers; (7) state law fabrication of evidence claims against Sullivan; (8) state law conversion claims against Sullivan; (9) federal claims under § 1983 against Sullivan for illegal search and seizure; (10) federal claims under § 1983 against Yonkers, Sullivan, Logan, and Scully for conspiracy; and (11) federal claims under § 1983 against Sullivan for retaliation. (*See* Compl.) Before the Court is a Motion for Summary Judgment on behalf of Defendants Yonkers and Sullivan (together, "Moving Defendants"). (Notice of Mot. for Summ. J. ("Notice of Mot.") (Dkt. No. 42).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from Defendants' statement pursuant to Local Civil Rule 56.1, (Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 45)), the exhibits submitted by Defendants, (Decl. of Rory McCormick in Supp. of Mot. for Summ. J. (McCormick Decl.)), as well as Plaintiff's deposition transcript, (Letter from Rory McCormick, Esq. to Court Ex. A ("Pl.'s Dep.") (Dkt. No. 48)), and are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (internal quotation marks omitted).[1] The facts as described below are not in dispute, except where indicated.

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and

On April 7, 2011 members of the Yonkers Police Department ("YPD"), including

Sullivan, responded to 31 Cedar Street on a call from a tenant of the building witnessing a tall

black male carrying numerous five-gallon containers of fuel into the basement.  (Defs.' 56.1 ¶ 1;

Decl. of Rory McCormick, Esq. ("McCormick Decl.") Ex. A ("YPD Crime Investigation

Report") (Dkt. No. 43); McCormick Decl. Ex. B ("YPD Supp. Report"); McCormick Decl. Ex.

---

concise statement of additional material facts as to which it is contended that there exists a
genuine issue to be tried."  Local Civ. R. 56.1(b).  "A pro se litigant is not excused from this
rule," *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3
(S.D.N.Y. Mar. 13, 2014) (italics omitted), and "[a] nonmoving party's failure to respond to a
Rule 56.1 statement permits the [C]ourt to conclude that the facts asserted in the statement are
uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009);
*see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same).
Here, Defendants filed and served their statement pursuant to Rule 56.1, (Dkt. No. 45), and filed
and served a statement notifying Plaintiff of the potential consequences of not responding to the
Motion, as required by Local Rule 56.2, (Notice of Mot.).  Despite this notice, Plaintiff failed to
submit a response to Defendant's 56.1 Statement of Facts.  Accordingly, the Court may conclude
that the facts in Defendant's 56.1 Statement are uncontested and admissible. *See Brandever,*
2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1
statement in response to the defendant's statement of facts, "there [were] no material issues of
fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL
4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).
        Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when
confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d
Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record,"
including Plaintiff's deposition testimony, when deciding the instant Motion, *Holtz v. Rockefeller
& Co.*, 258 F.3d 62, 73 (2d Cir. 2001).  *See also Houston v. Teamsters Local 210, Affiliated
Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014)
("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently
reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs
referenced in [the] defendants' Rule 56.1."); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-
3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) (italics omitted) ("[W]here a pro se
plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment
motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments,
where actually supported by evidentiary submissions." (internal quotation marks omitted));
*Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27,
2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in
light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which
he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

C ("YPD Radio").[2]  The fuel was causing fumes throughout the building and the tenant feared

for her safety.  (Defs.' 56.1 ¶ 1; YPD Crime Investigation Report; YPD Supp. Report; YPD

Radio).  Upon arrival the officers found multiple trails of oil leading to the basement.  (Defs.'

56.1 ¶ 1; YPD Crime Investigation Report; YPD Supp. Report; McCormick Decl. Ex. D

("Photos").)  Sullivan detected a strong odor of fuel oil emanating from the basement.  (Defs.'

56.1 ¶ 1; YPD Supp. Report.)

Sullivan then requested the presence of the Yonkers Fire Department ("YFD") as well as

the YPD Emergency Services Unit ("ESU") so that entry could be gained in the basement.

(Defs.' 56.1 ¶ 2; YPD Supp. Report.)  After ESU officials arrived at the scene, they breached the

basement door and left the door open to ventilate the basement.  (Defs.' 56.1 ¶ 2; YPD Supp.

Report.)  Inside the basement, the officers discovered 38 five-gallon containers of diesel fuel.

(Defs.' 56.1 ¶ 2; YPD Crime Investigation Report; YPD Supp. Report; Photos.)  YFD tested a

sample of the liquid in the containers and confirmed the liquid was diesel fuel.  (Defs.' 56.1 ¶ 2;

YPD Supp. Report.)  YFD also took an air sample of the basement which revealed a dangerously

high level of diesel in the air.  (Defs.' 56.1 ¶ 2; YPD Supp. Report.)

Yonkers Department of Public Works was notified and removed the 38 containers from

the building, and the Westchester County Police Bomb Squad stored them at the Westchester

County Police Academy.  (Defs.' 56.1 ¶ 2; YPD Crime Investigation Report; YPD Supp. Report;

Photos.)  A canvass of the building revealed that an unknown tenant photographed the male who

was carting the fuel oil into the basement.  (Defs.' 56.1 ¶ 3; YPD Supp. Report.)  Sullivan

contacted the owner of the building, Harout Tiratsuyan ("Tiratsuyan"), who viewed the photo

---

[2] Plaintiff testified he, on occasion, used the five-gallon containers to remove water from
the basement when it flooded by pumping water into the containers.  (Pl.'s Dep. 8–9.)

and identified Plaintiff as the individual in the picture. (Defs.' 56.1 ¶ 3; YPD Supp. Report; McCormick Decl. Ex. E ("Tiratsuyan Written Statement").) Tiratsuyan indicated that he had no knowledge that containers of diesel fuel were stored in the basement and that no containers were present in the basement when he was at the building the previous day to meet with Con Edison personnel. (Defs.' 56.1 ¶ 3; YPD Supp. Report; Tiratsuyan Written Statement).) Tiratsuyan explained that Plaintiff was someone he employed to do small jobs at the building such as cleaning the hallways, backyard, and taking out the trash on pick-up day. (Defs.' 56.1 ¶ 4; Tiratsuyan Written Statement; Pl.'s Dep 5–6.)[3] Additionally, Tiratsuyan told Sullivan that Plaintiff had a key to the basement and periodically stayed in a back spare room in the basement. (Defs.' 56.1 ¶ 4; Tiratsuyan Written Statement; Pl.'s Dep. 5–6 (testifying Plaintiff used the basement to store "personal" stuff and he "sometime" stayed overnight there).) Tiratsuyan met with Sullivan at 31 Cedar Street and saw the 38 five-gallon containers of diesel fuel. (Defs.' 56.1 ¶ 5; Tiratsuyan Written Statement.) Tiratsuyan also provided a written statement to Sullivan at the Yonkers Detective Division at approximately 2:50 p.m. on April 7, 2011. (Defs.' 56.1 ¶ 5; Tiratsuyan Written Statement.) Tiratsuyan stated that he never gave Plaintiff permission to store anything in the basement including any type of fuel. (Defs.' 56.1 ¶ 5; Tiratsuyan Written Statement.)

Sullivan arrested Plaintiff on April 7, 2011 at approximately 5:00 p.m. at his girlfriend's apartment on Linden Street. (Defs.' 56.1 ¶ 6; YPD Supp. Report; Pl.'s Dep. 8–9.) Plaintiff testified that "somebody knocked on the door and [he] looked through the peep hole and the person had his hand over the peep hole, so [he] stated, if you don't move your hand, I'm not the

---

[3] When citing to Plaintiff's deposition, the Court cites to the full version provided by Moving Defendants on August 29, 2018. (Pl.'s Dep.).)

letting you in." (Pl.'s Dep. 9.) And, "when they moved their hand, [he] s[aw] a couple of badges." (*Id.*) Plaintiff opened the door, the officers asked for his name, and when he answered, the officer said they were "looking" for him. (*Id.*) Plaintiff asked if he was under arrest, and they said "yeah" and then handcuffed him and took him to the station. (*Id.*) Plaintiff testified "[t]hey had no warrant, no nothing. They just arrested me." (*Id.* 9–10; *see also id.* at 21 ("[T]hey never had no warrant to come to my girl's house to arrest me).) When he got to the police station, Plaintiff learned he was being arrested in "connection with some fuel." (*Id.* at 10.) Sometime during this period, Plaintiff's girlfriend went to clean up his room in the basement of 31 Cedar Street and "all [his] stuff was thrown in water." (*Id.* at 22.) Plaintiff also went back, and "most of [his] shit was missing," including "two gold rings, a chain, [and] all [his] IDs." (*Id.*) Plaintiff testified that he believes he was being retaliated against as a result of a lawsuit he filed in 2002 alleging Yonkers detention officers beat him while he was in their custody. (*Id.*) Plaintiff believes two Yonkers officers lost their jobs as a result of his lawsuit. (*Id.* at 23.) However, Plaintiff contends that the lawyer prosecuting that lawsuit on his behalf was disbarred and the case was dismissed for failure to prosecute. (*Id.* at 24.)

On April 8, 2011, Sullivan signed a Misdemeanor Information, Indictment Number 11-1938, charging Plaintiff with the misdemeanor offenses of reckless endangerment in the second degree; reckless endangerment of property; and disorderly conduct: creating a hazardous/offensive condition. (Defs.' 56.1 ¶ 6; McCormick Decl. Ex. F ("Misdemeanor Information").) Additionally, Plaintiff had an unrelated pending felony Complaint in the Yonkers City Court, Indictment Number 11-733, "dated April 8, 2011, charging criminal possession of stolen property in the third degree." (Defs.' 56.1 ¶ 7; McCormick Decl. Ex. G

("Scully Letter").)[4]  Plaintiff proceeded to a jury trial on felony charges under Indictment Number 11-733.  (Defs.' 56.1 ¶ 8; McCormick Decl. Ex. H ("Sergi Letter"); McCormick Decl. Ex. I ("RAP Sheet") 7–8.)  On September 19, 2012, the jury convicted Plaintiff of burglary in the third degree, among other charges in Indictment Number 11-733, and found him not guilty on other charges.  (Defs.' 56.1 ¶ 8; Sergi Letter; RAP Sheet 7–8.)  On January 9, 2013, Plaintiff was sentenced to an indeterminate term of imprisonment of three and a half to seven years.  (Defs.' 56.1 ¶ 8; Sergi Letter; RAP Sheet 7–8.)  Plaintiff appealed, but the New York State Appellate Division affirmed the conviction.  (Pl.'s Dep. 16.)

On January 14, 2013, the misdemeanor charges in Indictment Number 11-1938, which are the subject of this Action, "were terminated by the People's indication to the City Court of Yonkers that those charges were satisfied by this Court's sentence under Indictment Number 11-0733, as any sentence on the addressed misdemeanors would merge with [the c]ourt's sentence upon those felony convictions."  (Defs.' 56.1 ¶ 8; Sergi Letter; *see also* McCormick Decl. Ex. J ("Yonkers City Court Certificate of Disposition"); McCormick Decl. Ex. K ("Yonkers City Court Decision & Order"'); McCormick Decl. Ex. L ("Yonkers City Court Transcript").)  Based on Plaintiff's recollection, after appearing in Yonkers City Court following the sentencing in Indictment Number 11-733, "they . . . convicted [him] without a trial."  (Pl.'s Dep. 19–20.)

---

[4] At his deposition, Plaintiff testified "'they' used the misdemeanors to hold me in jail.  I sat in there for a few months before I got indicted.  I wasn't indicted right away."  (Pl.'s Dep. 12; *see also id.* at 14 (Plaintiff "sat in the county jail [on the misdemeanor charge] while they build these cases and, again, they gave me a felony.").)  Plaintiff had no recollection of being indicted in April of 2011 in Indictment Number 11-733.  However, the record indicates that Indictment Number 11-733 was filed on April 8, 2011.  (Scully Letter.)

Plaintiff testified that he wrote to the judge following the hearing, and "they sent [him] a disposition back, dismissing the [misdemeanor] charges." (*Id.* 20.)[5]

Plaintiff testified that Scully, his lawyer for the misdemeanor charges in Indictment Number 11-1938, "kept putting [his] case off," and "kept waiving [Plaintiff's] case and kept leaving [him] in limbo." (Pl.'s Decl. 17.) Further, Plaintiff alleges Scully "kept going along with" Theodore Brundage, his lawyer in Indictment Number 11-733, and they "were working together and putting my cases off." (*Id.*) Scully told Plaintiff that Yonkers was "not going to take [him] to trial because they can't afford to take [him] to trial." (*Id.*) Plaintiff did not understand why he would "not get the right to go to trial." (*Id.*)

On April 10, 2015, Plaintiff served a Pro Se Notice of Claim on the City of Yonkers regarding the events that occurred on April 7, 2011, stating claims for "[f]alse arrest, [f]alse [i]mprisonment, [m]alicious [p]rosecution, [d]ue [p]rocess, [r]espondeat [s]uperior, *Monell Doctrine U.S. S.Ct.*, [n]egligent, [r]etention, [h]iring, [c]onversion of [p]ersonal [p]roperty, against the City of Yonkers and detective Sullivan, [f]abrication of [e]vidence, [c]onspiracy, [u]nlawful [s]earch and seizure, [w]arrantless entry, [r]etaliation." (McCormick Decl. Ex. P ("Notice of Claim") 3.)

B. Procedural History

Plaintiff filed the instant Complaint on May 14, 2015. (Compl.)[6] On August 26, 2015, Yonkers and Sullivan filed an Answer. (Dkt. No. 11.) On December 23, 2015, Plaintiff filed a

---

[5] The record indicates that on October 30, 2014, the Yonkers City Court adjudged that the charges in Indictment Number 11-1938 were "satisfied by Indictment # 11-733." (Yonkers City Court Certificate of Disposition.)

[6] On June 8, 2018, the Court issued an Order of Service to allow Plaintiff to effect service on Defendants through the U.S. Marshals Service. (Dkt. No. 6.) Defendant Logan was never served, (Dkt. Nos. 9, 13), and counsel for Moving Defendants were unable to provide an address

letter requesting the Court appoint pro bono counsel. (Dkt. No. 17.) In an Order dated February 23, 2016, the Court denied Plaintiff's Motion for Assignment of Counsel without prejudice, (Dkt. No. 18), and a copy of the Order was mailed to Plaintiff, (see Dkt. (entry for Feb. 29, 2016)). However, the Order was returned to the Court on March 18, 2016, (*see* Dkt. (entry for Mar. 18, 2016), so on September 1, 2016, the Court issued an Order directing Plaintiff to show cause, by no later than September 30, 2016, as to why this case should not be dismissed for failure to prosecute, (Order to Show Cause (Dkt. No. 19)). A copy of the Order was mailed to Plaintiff, (*see* Dkt. (entry for Sept. 2, 2016)), but the mail was returned to the Clerk of the Court, (*see* Dkt. (entry for Sept. 21, 2016)). On October 14, 2016, the Court obtained an address for Plaintiff from the New Rochelle Area Parole Office, and mailed another Order directing Plaintiff to show cause, by no later than November 13, 2016, as to why this case should not be dismissed. (Dkt. No. 21.) Plaintiff did not respond, and the Court dismissed the case for failure to prosecute. (Dkt. No. 22.)

On January 4, 2017, Plaintiff filed a letter requesting the Court re-open his case, (Dkt. No. 23), and the Court granted the request and scheduled a conference on February 8, 2018, (Dkt. No. 24). Plaintiff failed to appear at the conference until after the time scheduled for the conference had concluded. (*See* Dkt. (minute entry for Feb. 8, 2017).)[7] On July 20, 2017, the

---

following Logan's departure from the Westchester County District Attorney's Office, (Dkt. No. 20).

   [7] Plaintiff sent a number of letters regarding alleged harassment and threats by YPD officers unrelated to the issues raised in the Complaint, and requested an injunction. (Dkt. Nos. 25, 29). The Court advised Plaintiff that should he seek relief in connection with the alleged events raised in his letters, he should continue with his pending proceeding in state court regarding these allegations or file a separate federal action. (Dkt. No. 30.)

Court held a conference and set a discovery schedule. (Dkt. No. 31, 34.)[8] The Court held

another conference on January 9, 2018, and adopted a schedule for the instant Motion. (Dkt. No.

41.) In accordance with the scheduling order, Moving Defendants filed their Motions and

accompanying papers on February 9, 2018. (Notice of Motion; Defs.' Mem. Law in Supp. of

Mot. for Summary Judgment ("Defs.' Mem.") (Dkt. No. 44); McCormick Decl.; Defs.' 56.1.)

Plaintiff did not file a timely opposition to the Motion, but notified the Court on July 5, 2018 of

his updated address. (Dkt. No. 46.) On August 21, 2018, Plaintiff filed an opposition to the

Motion and renewed his request for counsel. (Pl.'s Mem. Law in Opp. to Mot. for Summary

Judgment ("Pl.'s Mem.") (Dkt. No. 47).) The Court denied Plaintiff's Motion for Assignment of

Counsel. (Dkt. No. 49.)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same). "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper

Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

(same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy*

---

[8] Plaintiff requested the Court appoint counsel again on June 12, 2017, August 4, 2017, and November 14, 2017, (Dkt. Nos. 32, 35, 38), which the Court denied, (Dkt. Nos. 33, 36, 39).

*Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir. 1988); *accord Mercado v. Div. of N.Y. State Police,* No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (italics and internal quotation marks omitted). And, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vermont Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)). "Nonetheless,

proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund,* 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and internal quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

B.  Second Cause of Action for False Arrest and Third Cause of Action for False Imprisonment[9]

A "§ 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006); *see also Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858944, at *10 (S.D.N.Y. Feb. 29, 2016) (same).  "A [§] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (internal quotation marks omitted).  "To prevail, a plaintiff must prove four elements: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest the confinement[,] and (4) the confinement was not otherwise privileged." *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014) (internal quotation marks omitted).  Probable cause is a complete defense to an action for false arrest, whether that action is brought under New York state law or under § 1983.  *See Simpson*, 793 F.3d at 265.  In general, probable

---

[9] "The common law tort of false arrest is a species of false imprisonment." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  Because under New York Law, the torts of false arrest and false imprisonment are "synonymous," *Jackson v. City of New York*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013) (quoting *Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir. 1991)), the Court analyzes the claims together.  *See also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017).

cause exists where an arresting officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (internal quotation marks omitted). Probable cause is measured based on "those facts available to the officer at the time of arrest and immediately before it," *id.* (internal quotation marks omitted), and the existence of probable cause must be determined based on the "totality of the circumstances," *see Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989). A court assessing probable cause must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).

Defendants argue that there was probable cause to arrest Plaintiff based on two statutes: reckless endangerment in the second degree, N.Y. Penal Law § 120.20, and reckless endangerment of property, N.Y. Penal Law § 145.25. (Defs.' Mem. 4.) "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." N.Y. Penal Law § 120.20. "A person is guilty of reckless endangerment of property when he recklessly engages in conduct which creates a substantial risk of damage to the property of another person in an amount exceeding two hundred fifty dollars." N.Y. Penal Law § 145.25. A Fourth Amendment claim turns on whether probable cause existed to arrest Plaintiff for any crime, not whether probable cause existed with respect to each individual charge. *See Devenpeck v. Alford*, 543 U.S. 146, 153–56 (2004). Accordingly, Defendants will prevail if there was probable cause to arrest Plaintiff for any single offense. *See Marcavage v. City of New York*, 689 F.3d 98, 109–10 (2d Cir. 2012).

Plaintiff was arrested on April 7, 2011. (YPD Supp. Report.) The record contains evidence that on the date of the arrest, the YPD call center received a call from a panicked tenant who witnessed a tall black male carrying numerous five-gallon containers of fuel in to the basement of her building. (YPD Crime Investigation Report; YPD Supp. Report; YPD Radio.) The scent of fuel had seeped through the apartment building, prompting the tenant to call the police. (YPD Crime Investigation Report; YPD Supp. Report; YPD Radio.) Tests conducted by the YPD confirmed the substance inside the containers was diesel fuel and that there was a dangerous level of diesel in the air. (YPD Crime Investigation Report.) Additionally, the way the fuel was stored created a fire risk, and required the Westchester County Bomb Squad to escort the fuel off site. (YPD Crime Investigation Report; YPD Supp. Report.) After canvasing the building, an unknown tenant provided a photo the tenant took of the male who placed the fuel in the basement. (YPD Supp. Report.) The owner of the building, Tiratsuyan, subsequently identified the person in the photo as Plaintiff, and explained that Plaintiff was employed by Tiratsuyan to do various tasks in the building, and that he had a key to the basement. (YPD Supp. Report; Tiratsuyan Written Statement.)

Having obtained all this information prior to the arrest, the undisputed facts support the conclusion that YPD and Sullivan had both "knowledge and reasonably trustworthy information of facts and circumstances that [were] sufficient to warrant a person of reasonable caution" to believe Plaintiff acted recklessly in creating a substantial risk of serious physical injury to another person. *Simpson*, 793 F.3d at 265.[10] The fact that no one was injured does not change

_____

[10] Plaintiff alleged in his Complaint that the fuel in the basement was actually Tiratsuyan's. (Compl. ¶¶ 61, 67.) Even if Tiratsuyan lied to the police, there is no evidence in the record that an objectively reasonable officer should have known that at the time, and, considering the totality of the circumstances, there was an abundance of other evidence leading up to the arrest, including the tenant's description and the photograph of Plaintiff, to form a

the analysis. "For probable cause to exist to arrest pursuant to New York Penal Law § 120.20, there need not be proof of actual serious physical injury to another person, only the substantial risk of such injury, recklessly created." *Higginbotham v. Sylvester*, 218 F. Supp. 3d 238, 242 (S.D.N.Y. 2016) (collecting cases), *aff'd sub nom.* 2018 WL 3559116 (2d Cir. July 25, 2018). Indeed, the undisputed facts surrounding Plaintiff's alleged storage of fuel in the basement at 31 Cedar Street demonstrate that a person of reasonable caution would infer that Plaintiff acted recklessly in creating a substantial risk of serious physical injury to another person by storing 38 five-gallon containers of diesel fuel in the basement, which not only created a fire hazard, but also caused dangerous levels of fumes. Thus, the evidence is sufficient to support a finding of arguable probable cause to arrest Plaintiff pursuant to New York Penal Law § 120.20. That is to say, there is no genuine dispute of material fact that it was objectively reasonable for the arresting officers to believe that probable cause existed, or at the very least, for officers of reasonable competence to disagree on whether probable cause existed. *See United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 85 (2d Cir. 2002) ("[T]he determination of probable cause is an objective one, to be made without regard to the individual officer's subjective motives or belief as to the existence of probable cause."). Accordingly, Moving Defendants are entitled to summary judgment on the second and third causes of action for false arrest and false imprisonment.

---

determination of probable cause to arrest Plaintiff. The police officers were not obligated to evaluate possible defenses Plaintiff may have been able to raise prior to arresting him. *See Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) ("[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." (internal quotation mark omitted).)

<u>C.  Fourth Cause of Action for Malicious Prosecution</u>

The Fourth Amendment protects individuals from criminal prosecution based on the "perversion of proper legal procedures."  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451, 457 (1975)).  Like false arrest claims, the elements of a malicious prosecution claim under [§] 1983 are "substantially the same as the elements under New York law."  *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (quotation marks omitted); *Brooks v. Panas*, No. 14-CV-4835, 2016 WL 614684, at *3 (E.D.N.Y. Feb. 16, 2016) (same).  To prevail on a claim of malicious prosecution, a plaintiff must show four elements: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice.  *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *accord O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996).  As with the false arrest claim, "[t]he existence of probable cause will defeat a claim of malicious prosecution."  *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012).  However, if "the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest," the malicious prosecution claim will not be defeated by a finding of probable cause to arrest.  *Drummond v. Castro*, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (internal quotation marks omitted).

The Court already has found that the undisputed facts support the conclusion probable cause existed to arrest Plaintiff on April 7, 2011.  *See supra* II.B.  Further, Plaintiff failed to establish the existence of evidence uncovered after the arrest that successfully vitiates probable cause.  Even if the fuel was not placed in the basement by Plaintiff, the overwhelming evidence available to Defendants at the time of the arrest sufficed to establish an objectively reasonable

basis for a finding of probable cause to arrest and prosecute Plaintiff. Accordingly, the Court grants summary judgment in favor of Moving Defendants for the fourth claim of malicious prosecution. *See Tardif v. City of New York*, No. 13-CV-4056, 2017 WL 571016, at *10 (S.D.N.Y. Feb. 6, 2017), *adopted in part,* 2017 WL 1079979 (S.D.N.Y. Mar. 22, 2017), *on reconsideration in part,* 2017 WL 3634612 (S.D.N.Y. Aug. 23, 2017) (granting summary judgment in favor of the defendant on malicious prosecution claim after finding probable cause existed to arrest Plaintiff).

### D. Fifth Cause of Action for Due Process Violation, Sixth Cause of Action for Illegal Search and Seizure, Tenth Cause of Action for Conspiracy, and Eleventh Cause of Action for Retaliation – Statute of Limitations[11]

Defendants argue that Plaintiff's fifth cause of action alleging due process violations, ninth cause of action for illegal search and seizure, tenth cause of action for conspiracy, and eleventh cause of action for retaliation are time-barred. (Defs.' Mem. 9–10.) The Supreme Court has held that the statute of limitations for federal claims under 42 U.S.C. § 1983 "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Accordingly, federal courts in New York apply a three-year statute of limitations for personal injury actions to § 1983 claims. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). However, the question of when a § 1983 claim accrues is a "question of federal law." *Wallace,* 549 U.S. at 388. "[A]ccrual occurs when [a] plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)

---

[11] Moving Defendants argue Sullivan is entitled to qualified immunity on "the remaining [§] 1983 claims." (Defs.' Mem. 7.) However, Moving Defendants make no actual arguments about "the remaining [§] 1983 claims" and why they are entitled to qualified immunity. (*Id.*) "The Court therefore declines to consider this argument, because it is not sufficiently explained by [Moving] Defendants, who are represented by counsel and attempting to dismiss a pro se Complaint." *Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *12 (S.D.N.Y. May 10, 2018).

(internal quotation marks omitted).  Put differently, accrual occurred when Plaintiff had "a complete and present cause of action, that is, when [P]laintiff [could] file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations and internal quotation marks omitted).  It does not wait "until [Plaintiff] has received judicial verification that [D]efendants' acts were wrongful." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994).  Plaintiff filed his Complaint on May 14, 2015, (Compl.), thus, any claims accruing prior to May 14, 2012 are time barred.

### 1. Sixth Cause of Action for Illegal Search and Seizure

To begin, any claim relating to the illegal search and seizure of Plaintiff's room at 31 Cedar Street accrued on the date of the search itself—April 7, 2011—and is thus time-barred. *See Wheeler v. Slanovec*, No. 16-CV-9065, 2018 WL 2768651, at *6 (S.D.N.Y. June 8, 2018) (holding claims relating to the illegal search of Plaintiff's home accrued on the date of the search); *Forbes v. City of New York*, No. 15-CV-3458, 2016 WL 6269602, at *3 (S.D.N.Y. Oct. 26, 2016) ("An unlawful search claim accrues at the time of the search." (internal quotation marks omitted)); *Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *10 (S.D.N.Y. Mar. 30, 2016) (holding that the plaintiff's Fourth Amendment claim accrued on "the date on which the allegedly illegal search and entry occurred" and collecting cases); *see also Williams v. Savory*, 87 F. Supp. 3d 437, 453 (S.D.N.Y. 2015) (rejecting as "incorrect" the plaintiff's argument that her § 1983 claim accrued on the date when she "came to know that her Constitutional protections were compromised" by an earlier warrantless seizure because her claim accrued when she know of the *harm*).  Accordingly, the Court grants summary judgment as to the ninth cause of action alleging illegal search and seizure.

2.  Eleventh Cause of Action for Retaliation

Plaintiff's cause of action alleging retaliation under the First Amendment is similarly time barred.  Plaintiff alleges "Sullivan took advantage of his position as a detective and retaliated against Plaintiff by trashing his room/apartment, and by causing Plaintiff to be arrested and prosecuted, when he was aware that evidence existed that Plaintiff was innocent of all criminal charges" as retaliation for "filing of a notice of claim upon the City of Yonkers in 2002," which caused a YPD Captain to be terminated for "assaulting Plaintiff, and making racist remarks during the assault."  (Compl. ¶ 119; *see also* Pl.'s Dep. 22–25.)  Important to the First Amendment retaliation claim, "the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of the injury is not then known or predictable."  *Wallace,* 549 U.S. at 391 (citation omitted).

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  Plaintiff's cause of action would have thus accrued at the time of the allegedly retaliatory search and arrest—April 7, 2011.  As of that date, Plaintiff had engaged in protected speech by filing the notice of claim in 2002.  Accordingly, as alleged, his cause of action for First Amendment retaliation accrued more than three years prior to the filing of the initial complaint on May 14, 2015.  "That the full scope of [his] injury was not known at that time, including whether or not [he] would be convicted . . . that [Sullivan] would continue harassment, does not alter the date that [his] cause of action accrued."  *Smith v. Campbell*, 782 F.3d 93, 100–02 (2d Cir. 2015) (finding First Amendment

retaliation claim accrued when allegedly retaliatory traffic tickets were delivered to the plaintiff, not after the date of the trial); *Deraffele*, 2016 WL 1274590, at *10 (finding First Amendment retaliation claim accrued when allegedly retaliatory citations were issued); *Turner v. Boyle*, 116 F. Supp. 3d 58, 83–84 (D. Conn. 2015) (noting that "a claim for . . . First Amendment retaliation[] accrues at the time that the allegedly wrongful conduct took place").[12]  Accordingly, the Court grants summary judgment as to the eleventh cause of action alleging retaliation.[13]

### 3.  Fifth Cause of Action for Due Process Violation and Tenth Cause of Action for Conspiracy

Whether Plaintiff's fifth cause of action for violation of his right to due process and tenth cause of action for conspiracy is untimely is unclear from the record.  Both Plaintiff's due process and conspiracy claim are related to the alleged denial of his speedy trial rights.  (Compl.

---

[12] The Court in *Smith* explicitly rejected the argument that a cause of action for First Amendment retaliation accrues after trial, noting, that in the "[Second] Circuit, First Amendment claims, even those arising out of the same series of events that give rise to Fourth Amendment claims, do not require a favorable termination in the criminal action to be cognizable as a matter of law." *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015) (citing *Johnson v. Bax*, 63 F.3d 154, 159 (2d Cir. 1995) ("Unlike claims sounding in malicious prosecution . . . the favorable termination of a criminal proceeding is not an essential element of an independent First Amendment claim."). In *Smith*, court analogized the temporal posture of a First Amendment retaliatory prosecution claim with unlawful arrest claim, which the Supreme Court's decision in *Wallace* held accrued prior to any conviction. *Id.* (citing *Wallace*, 549 U.S. at 394) ("If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed absent some other bar to suit.").

[13] Even if not time barred, because the Court has already found there was no material dispute that there was probable cause to arrest Plaintiff on April 7, 2011, Plaintiff has failed to prove a protected interest. *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("[P]robable cause will . . . defeat a First Amendment claim that is premised on the allegation that [the] defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her." (quotation marks and citations omitted)); *Tardif v. City of New York*, No. 13-CV-4056, 2017 WL 571016, at *11 (S.D.N.Y. Feb. 6, 2017), *adopted in relevant part*, 2017 WL 1079979 (S.D.N.Y. Mar. 22, 2017), *on reconsideration in part*, 2017 WL 3634612 (S.D.N.Y. Aug. 23, 2017) (granting summary judgment because the "finding that probable cause existed to arrest the plaintiff . . .  defeat[ed] the plaintiff's First Amendment retaliation claims").

¶ 103 (alleging Plaintiff was denied access to a trial within 90 days); *id.* ¶ 116 (alleging there was a conspiracy to deny him his right to a speedy trial for 21 months).) Moving Defendants argue these claims are time barred "because the events giving rise to this case occurred on April 7, 2011." (Defs.' Mem. 10.) However, Plaintiff alleges his denial of due process and the conspiracy continued for twenty-one months from Plaintiff's arrest on April 7, 2011—in other words, the alleged conduct continued until approximately May 2013. (Compl. ¶¶ 103, 116.) The record indicates Plaintiff's trial was in fact delayed due to the felony charges in Indictment Number 11-773. (Scully Letter; Sergi Letter; Yonkers City Court Decision & Order; Yonkers City Court Transcript.) The record does not support Defendants' argument that this cause of action accrued on April 7, 2011, because at that time, there had been no delay of Plaintiff's trial, and Plaintiff would not yet have had "a complete and present cause of action" as to either claim at that time. *Wallace*, 549 U.S. at 388. Because Moving Defendants do not properly brief how the Court should calculate the statute of limitations as to these claims, and cite to no cases addressing the question, the Court declines to determine whether summary judgment should be granted based on the statute of limitations, and will proceed to the merits. *Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, at *11 (E.D.N.Y. Mar. 31, 2015) (deciding speedy trial rights claim on the merits because, "[a]lthough [the d]efendants argue that [the p]laintiff's Sixth Amendment claim is barred by the statute of limitations, [the d]efendants offers no explanation for this contention").

E.  Fifth Cause of Action for Due Process Violation

Regardless of whether it is timely, Plaintiff's due process claim nonetheless fails to survive summary judgment, as there is no dispute of material facts regarding Moving Defendant's lack of personal involvement in the alleged constitutional violation. Plaintiff alleges

a federal claim under § 1983 for violation of his due process rights, because he was not tried within 90 days, as required by law.  (Compl. ¶ 103.)  The Court presumes Plaintiff is referencing New York Criminal Procedure Law § 30.30, which requires dismissal if the People are not ready for trial within ninety days of the commencement of a criminal action when a defendant is accused of at least one misdemeanor.  N.Y. Crim. Pro. L. §§ 30.30(1)(b).  Construing Plaintiff's Complaint liberally, the Court reads Plaintiff's allegations regarding the Due Process cause of action to be a claim for deprivation of Plaintiff's Sixth Amendment speedy trial rights.  *Blount v. Moccia*, No. 16-CV-4505, 2017 WL 5634680, at *7 (S.D.N.Y. Nov. 21, 2017) (finding Plaintiff's allegation regarding a violation of N.Y. Crim. Pro. Law § 30.30 "may also be read to raise a claim under the Sixth Amendment").  "Violations of this constitutional right can be redressed through civil actions brought under [§] 1983." *Brooks*, 2016 WL 614684, at *4.[14]

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

(1) the defendant participated directly in the alleged constitutional violation[;]
(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under

---

[14] Because the limitations of N.Y. Crim. Pro. Law § 30.30 are a state statutory standard, "a violation of § 30.30 is not in itself a violation of the Constitution or federal law, an element of a § 1983 claim." *Fobbs v. City of New York*, No. 15-CV-6736, 2017 WL 2656207, at *3 (S.D.N.Y. June 19, 2017), *appeal dismissed sub nom.* 2018 WL 3617815 (2d Cir. May 22, 2018); *see also Jackson v. Marshall*, No. 04-CV-3915, 2008 WL 800745, at *4 (S.D.N.Y. Mar. 25, 2008) (because the limitations of § 30.30 are statutory, not constitutional, "a violation of § 30.30 cannot be the basis of a § 1983 claim"); *Gibriano v. Att'y Gen. of State of New York*, 965 F. Supp. 489, 491–92 (S.D.N.Y. 1997) (noting, in the context of a habeas corpus action, "[§] 30.30 is a statutory time in which the People of New York must be ready for trial; [§] 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial." (internal quotation marks omitted)).

which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must present evidence of conduct by Sullivan that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

The record references Sullivan only in the context of the events on April 7, 2011. (Pl.'s Dep. 9, 25.) There is no evidence that Sullivan participated directly or somehow permitted the delay of Plaintiff's trial, supervised anyone responsible or the delay, was informed or even knew about the delay and failed to remedy the wrong or act on information indicating that unconstitutional acts were occurring, or created a policy or custom that led to the delay. Plaintiff's opposition to the Motion discusses alleged conduct by Scully and Logan that deprived him of his right to a speedy trial, but makes no reference to Sullivan's involvement in the denial of his speedy trial rights. (*See generally* Pl.'s Opp.) "The absence of any facts [showing] a defendant's personal involvement in the violation of a plaintiff's Sixth Amendment right to a speedy trial, therefore, dooms any such claim." *Brooks*, 2016 WL 614684, at *4. *See also Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *10, (S.D.N.Y. Dec. 15, 2015) (dismissing § 1983 claim for violation of speedy trial rights where "[the p]etitioner [did] not allege that any of the remaining [r]espondents were personally involved in the violation of his

speedy trial rights"); *Davis v. Nassau Cty.*, No. 06-CV-4762, 2011 WL 5401663, at *7,

(E.D.N.Y. Nov. 5, 2011) (granting summary judgment in favor of the defendants on the

plaintiff's § 1983 speedy trial claim because the plaintiff failed to put forth sufficient evidence of

the defendants' personal involvement in any deprivation of his speedy trial rights). The Court

therefore grants summary judgment to Sullivan because Plaintiff has not created a dispute of

material fact as to whether Sullivan was personally involved in the violation of Plaintiff's due

process rights.

To the extent Plaintiff also is asserting a substantive due process claim, this also fails.

"[W]here another provision of the Constitution 'provides an explicit textual source of

constitutional protection,' a court must assess a plaintiff's claims under that explicit provision

and 'not the more generalized notion of substantive due process.'" *Kia P. v. McIntyre*, 235 F.3d

749, 757–58 (2d Cir. 2000) (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999)); *see also Velez

v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("[W]here a specific constitutional provision prohibits

government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot

make reference to the broad notion of substantive due process."). This is so because, as the

Supreme Court has observed, "the guideposts for responsible decisionmaking" in the

"unchartered area" of substantive due process "are scarce and open-ended." *Albright v. Oliver*,

510 U.S. 266, 271–72 (1994) (plurality opinion). As a result, the Supreme Court has "always

been reluctant to expand the concept of substantive due process" and has limited the availability

of such claims to those which are not covered under other constitutional amendments. *County of

Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The Court concludes, therefore, that, because

all of Plaintiff's constitutional claims are covered under either Fourth or Sixth Amendment

standards, he does not have an additional substantive due process cause of action under the

Fourteenth Amendment. *See Velez*, 401 F.3d at 94 (holding that the "plaintiff's substantive due process claim is either subsumed in her more particularized allegations," raising First Amendment and Equal Protection Clause claims, "or must fail"); *Case v. City of New York*, 233 F. Supp. 3d 372, 395–96 (S.D.N.Y. 2017) (same).

F. Tenth Cause of Action for Conspiracy

Defendants argue that, even assuming they are timely, Plaintiff's conspiracy allegations should be dismissed. (Defs.' Mem. 10.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Corsini v. Brodsky*, 2018 WL 1773501, at *19 (2d Cir. April 13, 2018) (same) (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)). Plaintiff has failed to satisfy this standard, as he has presented no evidence that the YPD or Sullivan had any involvement in the decision to keep him in jail during that time period, let alone that they were involved in an agreement to do so or that there was a "meeting of the minds" with the other Defendants. That they were involved in his arrest has no bearing on his access to a speedy trial. Indeed, the record shows that the delay in Indictment Number 11-1938 was the result of the pending trial in his other felony matter, resulting in "the local court [being] relegated to tracking the felony case." (Scully Letter.) There are no facts in the record that YPD or Sullivan knew about, much less played any role in, that decision. *See Wheeler*, 2018 WL 2768651, at *10 (granting motion to dismiss where "[t]here is no allegation whatsoever that any [d]efendant was involved in these proceedings"); *McGee v. Dunn*, No. 09-CV-6098, 2015 WL 9077386, at *6 (S.D.N.Y. Dec. 16, 2015), *aff'd*, 672 F. App'x 115 (2d Cir. 2017) (granting summary judgment

where "[t]he plaintiff provide[d] only conclusory allegations . . . and "those allegations [were] easily disproved [by the record], and the plaintiff offer[ed] insufficient evidence, if any, to conclude otherwise or show a genuine issue of material fact); *Sylvester v. City of New York*, 385 F. Supp. 2d 431, 446 (S.D.N.Y. 2005) (granting summary judgment where " the plaintiffs have failed to present evidence regarding the existence of an agreement to violate their constitutional rights"). Thus, there is no genuine issue of material fact regarding whether YPD and Sullivan entered into an agreement to violate Plaintiff's constitutional rights. Summary judgment therefore should be granted in favor of Moving Defendants for the tenth cause of action.

### G. First Cause of Action for *Monell* Claims Against City of Yonkers

Defendants argue that Plaintiff fails to plausibly state a *Monell* claim against the City of Middletown. (Defs.' Mem. 8–9.) "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

Because Plaintiff has failed to allege a deprivation of a constitutional right as to the false arrest, false imprisonment, malicious prosecution, due process violations, illegal search and seizure, conspiracy, and retaliation claims, there is no dispute as to material fact that Plaintiff was not deprived of a constitutional right and cannot satisfy the burden of proving Yonkers liable under *Monell*. *Roe*, 542 F.3d at 36 (listing "deprivation of a constitutional or statutory right" as

element a plaintiff is required to prove to bring a claim of municipal liability).  Accordingly, the

Court grants Moving Defendant's summary judgment motion as to the City of Yonkers.

### G. Sixth Cause of Action for Respondeat Superior Liability, Seventh Cause of Action for State Law Fabrication of Evidence, Eighth Cause of Action for State Law Conversion

There are certain procedural hurdles that a plaintiff must cross before he is able to sue

employees of the City of Yonkers.  Under New York law, an individual suing city employees

must file a notice of claim.  New York's General Municipal Law provides in pertinent part:

> No action . . . shall be . . . maintained against a city . . . or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the city . . . in compliance with [§ 50-e] of this article[.]

N.Y. Gen. Mun. Law § 50–i(1).  Section 50–e provides in pertinent part that for a "case founded

upon tort," notice of the claim must be served "within ninety days after the claim arises."  N.Y.

Gen. Mun. Law § 50–e(1)(a).  "A plaintiff's state law tort claims in a federal civil rights action

against . . . police officers employed by the city should be dismissed when plaintiff's notice of

claim is filed more than 90 days after the claims arose."  *Bender v. Alvarez,* 06–CV–3378, 2009

WL 112716, at *10 (E.D.N.Y. Jan. 16, 2009) (citing *Brogdon v. City of New Rochelle,* 200 F.

Supp. 2d 411, 428 (S.D.N.Y. 2002) (internal quotation marks omitted).

The incident giving rise to the state law claims suggested by Plaintiff's Complaint

occurred on April 7, 2011, when Defendants searched Plaintiff's room and seized certain of his

possessions and arrested him.  The record indicates that Plaintiff did not file his notice of claim

until April 10, 2015.  (Notice of Claim.)  Even assuming he was able to wait until the conclusion

of his trial to file the Notice, the period of time between the disposition of his criminal case on

January 14, 2014 and April 10, 2015 is longer than ninety days.  As a result, Plaintiff's notice

was untimely.  Therefore, Defendants' motion for summary judgement is granted as to the state

law claims.  *Forney v. Forney*, 96 F. Supp. 3d 7, 14 (E.D.N.Y. 2015) (dismissing claims for failure to timely file a notice of claim).

<h3 align="center">III.  Conclusion</h3>

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 42), enter judgment for Moving Defendants, and mail a copy of this Opinion to Plaintiff.

Additionally, the Court Orders counsel for Moving Defendants to provide additional identifying information on Defendant Logan so that the Court can proceed with serving him.  It is generally Plaintiff's responsibility to ensure that service is made and, if necessary, to request an extension of time of service.  *See Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012).  However, when the action involves a pro se inmate, the process rules "are more lenient than for represented members of the general public."  *Mahon v. Namani*, No. 15-CV-2032, 2016 WL 6820739, at *3 (S.D.N.Y. Nov. 10, 2016).  When a plaintiff is proceeding in forma pauperis and relying on the U.S. Marshals, the responsibility for serving the complaint shifts from the plaintiff to the Court.  *See Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996); *see also Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986).  Here, Plaintiff relied on U.S. Marshals to effect service on Defendant Logan through an Order of Service dated June 8, 2015.  (Dkt. No. 7.)  However, the U.S. Marshals were unable to serve Defendant Logan.  (Dkt. No. 10.)  Counsel for Defendants previously indicated Logan was no longer employed by the Westchester County District Attorney's Office and they were not aware of a more updated address.  (Dkt. No. 20.)  In order for the Court to ascertain the addresses where Defendant Logan may be served, the Court orders counsel for Moving Defendants to provide the Court with *any* identifying information that may assist the Court in locating Defendant Logan.  Counsel for Moving Defendants shall provide

this information to the Court within 21 days of the date of this order. If Counsel for Defendants believes such information needs to be filed under seal, they may make such a request to the Court.

SO ORDERED.

DATED:      September 28, 2018
            White Plains, New York

                                          _____
                                          KENNETH M. KARAS
                                          UNITED STATES DISTRICT JUDGE