UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEROME BARNETT,

                              Plaintiff,

           v.

THE CITY OF YONKERS, *et al.*,

                             Defendants.

No. 15-CV-4013 (KMK)

OPINION & ORDER

Appearances:

Jerome Barnett
Cape Vincent, NY
*Pro se Plaintiff*

Irma Wheatfield Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant Richard Logan*

KENNETH M. KARAS, United States District Judge:

      Pro se Plaintiff Jerome Barnett ("Plaintiff") brings this Action against the City Of Yonkers ("Yonkers") and Detective Sullivan ("Sullivan") (jointly, "Yonkers Defendants"); Karl A. Scully, Esq. ("Scully"); and Richard Logan, Esq. ("Logan" or "Defendant") (collectively, "Initial Defendants"), alleging Initial Defendants violated his rights under the Fourth and Sixth Amendments of the United States Constitution and under New York state law. (*See* Compl. (Dkt. No. 2).) On September 28, 2018, the Court granted the Yonkers' Defendants' Motion for Summary Judgment, and entered judgment in their favor. (*See* 2018 Opinion (Dkt. 50).) Before the Court is Logan's Motion To Dismiss (the "Motion"). (Def.'s Not. of Mot. ("Not. of Mot.") (Dkt. No. 85).) For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The Court has already provided a full description of the facts of this case in a prior Opinion. (*See* 2018 Op.) Accordingly, the Court relates only those facts, drawn from Plaintiff's Complaint and presumed true, relevant to the instant Motion.

From June 10, 2009 through January 1, 2015, over 100 civil rights actions were filed against members of the Yonkers Police Department ("YPD"). (Compl. ¶ 16.) Most of these actions pertained to alleged uses of excessive force, unlawful searches and seizures, false arrests and malicious prosecutions. (*Id.* ¶ 17.)

On April 7, 2011, occupants of a residence at 31 Cedar Street called 911 to report fumes coming from the building. (*Id.* ¶ 56.) Members of the YPD, including Sullivan, responded to the scene and determined that the fumes were coming from 30 five-gallon containers of fuel stored in the basement. (*Id.* ¶¶ 56–57.) After interviewing residents and reviewing camera footage, Sullivan focused his investigation on Plaintiff, who lived in the basement apartment of the building. (*Id.* ¶¶ 58–59.) Sullivan then searched Plaintiff's room, damaged Plaintiff's property by throwing several items into sewage water, and stole several pieces of jewelry and other personal possessions. (*Id.* ¶ 60.) Later that day, Sullivan arrested Plaintiff at his girlfriend's residence, allegedly using a racial slur, threatening Plaintiff, and suggesting that the arrest was retaliation for Plaintiff's prior interactions with law enforcement. (*Id.* ¶¶ 68–70.)

"Plaintiff was produced in Yonkers City Court and assigned counsel on or about April 8, 2011." (*Id.* ¶ 72.) Plaintiff was then assigned a series of lawyers, each of whom was "relieved due to their urgency in having Plaintiff take a plea bargain," while Plaintiff insisted on

maintaining his innocence. (*Id.* ¶ 73.) Eventually, Scully was assigned to represent Plaintiff, and Plaintiff immediately informed Scully of his innocence and his desire to stand trial. (*Id.* ¶ 74.)

On April 28, 2011, Plaintiff was indicted on unrelated charges by the Westchester District Attorney's Office ("WDAO") in Westchester County Court. (*Id.* ¶ 75.) At the time, Logan was an Assistant District Attorney of the WDAO. (*Id.* ¶ 10.) Plaintiff was represented in the Westchester County Court proceedings by T. Brundage ("Brundage"). (*Id.* ¶ 80.) However, Plaintiff alleges that Scully and Brundage "inappropriately" exchanged information regarding Plaintiff's criminal matters without Plaintiff's authorization. (*Id.* ¶¶ 80–81.)

Plaintiff further alleges that Scully and Logan "acted in concert" to prevent Plaintiff from going to trial on the Yonkers City Court charges. (*Id.* ¶ 76.) In particular, Scully repeatedly acquiesced to requested adjournments, ignoring Plaintiff's vocal objections to the same. (*Id.*) Finally, in January 2013, Plaintiff was convicted after trial of several of the charges in Westchester County Court. (*Id.* ¶ 77.) The next day, Plaintiff was taken to Yonkers City Court for an appearance on a misdemeanor charge, which had been pending for 21 months. (*Id.* ¶ 78.) The Yonkers City Court determined that the pending charge was "satisf[ied]" by the Westchester County Court verdict. (*Id.*)

Plaintiff was then transferred to the custody of the New York State Department of Correction and Community Supervision ("DOCCS"), where he initiated several grievance proceedings seeking to "remove all charges relating to the Yonkers City Court from his record." (*Id.* ¶ 79.) On March 27, 2015, Justice Thomas R. Daly of Yonkers City Court dismissed all charges relating to the Yonkers City Court matter. (*Id.* ¶ 86.)

Based on the foregoing, Plaintiff alleges violations of his rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments. (*Id.* ¶ 87.) In particular, Plaintiff alleges that Logan

"conspired" with Scully and others to delay Plaintiff's case in Yonkers City Court through repeated adjournments. (*Id.* ¶ 82.) Accordingly, Plaintiff seeks compensatory and punitive damages of at least $750,000, as well as attorney costs, and any other remedies that the Court may provide. (*Id.* ¶ 120.)

B. Procedural Background

Plaintiff initiated the Action by filing the instant Complaint on May 14, 2015. (Compl.) On June 8, 2018, the Court issued an Order of Service. (Dkt. No. 6.) Although most Initial Defendants were served, Logan was not. (Dkt. Nos. 9, 13.)[1] As counsel for the Yonkers Defendants explained, they were unable to provide an address for Logan following his departure from the Westchester County District Attorney's Office. (Dkt. No. 20). On August 26, 2015, Yonkers and Sullivan filed an Answer. (Dkt. No. 11.)

On December 23, 2015, Plaintiff filed a letter requesting that the Court appoint pro bono counsel. (Dkt. No. 17.) In an Order dated February 23, 2016, the Court denied Plaintiff's Motion for Assignment of Counsel without prejudice, (Dkt. No. 18), and a copy of the Order was mailed to Plaintiff, (*see* Dkt. (entry for Feb. 29, 2016)). However, the Order was returned to the Court on March 18, 2016. (*See* Dkt. (entry for Mar. 18, 2016).) On September 1, 2016, the Court issued an Order directing Plaintiff to show cause, by no later than September 30, 2016, why this case should not be dismissed for failure to prosecute. (Order to Show Cause (Dkt. No.

---

[1] Although a summons was issued as to Scully on June 22, 2015, (*see* Dkt. (entry for June 22, 2015)), and proof of effective service on Scully was filed on July 30, 2015, (Dkt. No. 10), Scully did not initially appear in this Action, (*see* Dkt. No. 60 at 1 n.1). He was therefore deemed in default under Federal Rule of Civil Procedure 55(a). (*Id.*) However, on September 20, 2019, Scully filed a notice of appearance on his own behalf and a letter stating his desire to contest Plaintiff's claims. (Dkt. Nos. 71–72.) The Court then denied Plaintiff's Motion for Default Judgment against Scully, and directed Scully to file an Answer by October 25, 2019. (Dkt. No. 77.) On October 23, 2019, Scully filed an Answer. (Dkt. No. 78.)

19).)  A copy of the Order was mailed to Plaintiff, (*see* Dkt. (entry for Sept. 2, 2016)), but the Order was again returned to the Clerk of the Court, (*see* Dkt. (entry for Sept. 21, 2016)).  On October 14, 2016, the Court obtained an address for Plaintiff from the New Rochelle Area Parole Office, and mailed another Order directing Plaintiff to show cause, by no later than November 13, 2016, why this case should not be dismissed.  (Dkt. No. 21.)  Plaintiff did not respond, and on December 7, 2016, the Court dismissed the case for failure to prosecute.  (Dkt. No. 22.)

On January 4, 2017, Plaintiff filed a letter requesting that the Court re-open his case.  (Dkt. No. 23.)  Two days later, the Court granted the request and scheduled a conference for February 8, 2017.  (Dkt. No. 24).  Plaintiff failed to appear at the conference until after the time scheduled for the conference had concluded.  (*See* Dkt. (minute entry for Feb. 8, 2017).)  On July 20, 2017, the Court held a conference and set a discovery schedule.  (Dkt. Nos. 31, 34.)[2]  On February 9, 2018, pursuant to a scheduling order issued by this Court, the Yonkers Defendants filed their Motion for Summary Judgment and accompanying papers.  (Dkt. Nos. 41–43.)  On September 28, 2018, the Court issued an Opinion & Order granting the Motion for Summary Judgment and entering judgment for the Yonkers Defendants.  (*See generally* 2018 Op.)  The Court simultaneously ordered counsel for the Yonkers Defendants to provide additional identifying information concerning Logan to facilitate service on him.  (*Id.* at 29–30.)

On October 15, 2018, Counsel for Yonkers Defendants responded to the Court's directive concerning identification of Logan.  (Dkt. No. 52.)  On June 20, 2019, the Court issued an Order of Service with respect to Logan.  (Dkt. No. 60.)  Logan was served on August 7, 2019, (Dkt. No. 66), and pursuant to the Court's scheduling order, (Dkt. No. 76), Logan filed the instant

---

[2] Plaintiff requested the Court appoint counsel again on June 12, 2017, August 4, 2017, and November 14, 2017, (Dkt. Nos. 32, 35, 38), which the Court denied, (Dkt. Nos. 33, 36, 39).

Motion and accompanying papers on November 20, 2019, (Not. of Mot.; Decl. of Irma Cosgriff, Esq. in Supp. of Mot. ("Cosgriff Decl.") (Dkt. No. 86); Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 88)). Plaintiff twice requested additional time to respond to the Motion, (Dkt. Nos. 90, 92), and the Court set March 31, 2020 as the final deadline for Plaintiff's response, (Dkt. No. 94). Plaintiff never filed a response, and the Court deems the Motion fully submitted.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will .

6

. . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering the Defendant's Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the Court must "draw[ ] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice

7

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11 CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

### B. Analysis

Defendant argues that Plaintiff's claims are barred by absolute immunity, that Plaintiff has failed to state a cognizable claim for malicious prosecution, violation of due process, or conspiracy, that the Complaint fails to comply with Federal Rule of Civil Procedure 4(m), and that many of Plaintiff's claims are barred by the applicable statutes of limitations. (*See generally* Def.'s Mem.) Because the Court agrees with Defendant's absolute immunity argument, it need not, and does not, reach the remaining arguments.

#### 1. Absolute Immunity Generally

"Absolute immunity protects a prosecutor not only from liability but also from suit." *Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (citation and quotation marks omitted). Prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when "function[ing] as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004)

(citation and quotation marks omitted); *see also Kroemer v. Tantillo*, 758 F. App'x 84, 86–87 (2d Cir. 2018) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate.") (alterations and quotation marks omitted) (quoting *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995))). However, not every action performed by a prosecutor is "absolutely immune merely because [it was] performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Rather, a prosecutor's entitlement to absolute immunity turns on "the capacity in which the prosecutor acts at the time of the alleged misconduct." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). Thus, to determine whether a prosecutor's conduct is entitled to absolute immunity, courts apply "a functional approach, which looks to the nature of the function performed [by the prosecutor], not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations and quotation marks omitted); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (noting that courts "must take account of . . . 'functional' considerations" in deciding "whether absolute immunity attaches to a particular kind of prosecutorial activity" (citations omitted)).

It is clear that "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions" covered by absolute immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Hill*, 45 F.3d at 661 (noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings (citations omitted)). Also covered is prosecutors' "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273; *see also Hill*, 45 F.3d at 661 (noting that prosecutors are

"immune for conduct in preparing for [prosecutorial] functions," including "evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged") (citations omitted)). Absolute immunity even protects "the knowing presentation of perjured testimony to a grand jury, without any prosecutorial involvement in its earlier inducement." *Bernard*, 356 F.3d at 506 (citation omitted). Furthermore, a prosecutor's motives for actions that are deemed to be within his or her role as an advocate are irrelevant for purposes of absolute immunity. *See Shmueli*, 424 F.3d at 237–38 (holding that absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy"); *Bernard*, 356 F.3d at 503 (holding that "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused" (citation omitted)).

By contrast, "[w]hen a [prosecutor] functions outside his or her role as an advocate for the People, the shield of [absolute] immunity is absent." *Hill*, 45 F.3d at 661. Specifically, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273 (citation and quotation marks omitted); *see also Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) ("[W]hen a prosecutor . . . performs the investigative functions normally performed by a detective or police officer, he is eligible only for qualified immunity." (citations and quotation marks omitted)). When determining whether a prosecutor is functioning within a prosecutorial or an investigative role, courts must look to the prosecutor's general "role and function in an ongoing proceeding," and will reach a determination based "chiefly on whether there is pending or in preparation a court

10

proceeding in which the prosecutor acts as an advocate." *Ogunkoya*, 913 F.3d at 70 (citation and quotation marks omitted).

### 2.  Application

Here, the Complaint contains only a single allegation with respect to Logan.  Specifically, Plaintiff alleges only that Logan "conspired" with Scully and Brundage to "delay/adjourn Plaintiff's case in Yonkers City Court until Plaintiff's sentencing on the Westchester Country Court matter."  (Compl. ¶ 82.)  Such conduct cannot subject Logan to suit because requests for adjournments are clearly a part of "the initiation and pursuit of a criminal prosecution," and are therefore "quintessential prosecutorial functions" covered by absolute immunity.  *Shmueli*, 424 F.3d at 237 (citation omitted); *see also Van de Kamp*, 555 U.S. at 343 (noting that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding" (citation omitted); *Blue v. City of New York*, No. 16-CV-9990, 2018 WL 2561023, at *10 (S.D.N.Y. June 4, 2018) (prosecutors "are protected by absolute immunity with respect to . . . § 1983 conspiracy claims" based on indictments they file).  Indeed, the Second Circuit has expressly held that when a prosecutor's charging decisions "delay [a plaintiff's] arraignment on separate individual charges," such decisions are shielded by absolute immunity.  *Ogunkoya*, 913 F.3d at 66.  Moreover, as Plaintiff himself acknowledges, Logan's alleged conduct occurred while "a court proceeding in which [Logan] act[ed] as an advocate" was "pending."  *Warney v. Monroe County*, 587 F.3d 113, 123 (2d Cir. 2009).  Logan's conduct therefore lies squarely within the field of conduct shielded by prosecutorial immunity.  *See id.*  "Accordingly, because absolute immunity applies to each of the allegations asserted against [Logan], the Court dismisses [Logan] from this Action."  *Cox v. City of New Rochelle*, No. 17-CV-8193, 2019 WL 3778735, at *11 (S.D.N.Y. Aug. 12, 2019).

III. Conclusion

For the reasons stated above, Defendant's Motion is granted. Because this dismissal is based on the clear applicability of absolute immunity, the Court concludes that amendment would be futile. *See Franza v. Stanford*, No. 18-CV-10892, 2019 WL 6729258, at *9 (S.D.N.Y. Dec. 11, 2019), *reconsideration denied*, 2020 WL 85228 (S.D.N.Y. Jan. 3, 2020) (denying leave to amend, for futility, because dismissal was based on absolute immunity); *Karris v. Varulo*, No. 14-CV-1077, 2014 WL 1414483, at *4 (E.D.N.Y. Apr. 10, 2014) ("Any amendment to [the] plaintiff's amended complaint would be futile because, inter alia, all defendants are entitled to absolute immunity . . . ." (italics omitted) (collecting cases)). Accordingly, and because the majority of Plaintiff's claims have already been adjudicated on the merits and judgment entered against him on those claims, (*see* 2018 Op.), dismissal is with prejudice, and Plaintiff is denied leave to amend. *See Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) ("[T]he district court has the discretion to deny leave [to amend] if there is a good reason for it, such as futility . . . ." (citing, inter alia, *Foman v. Davis*, 371 U.S. 178, 182 (1962))); *Dilacio v. N.Y.C. Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 578 (S.D.N.Y. 2008) (denying leave to replead because defendant was "absolutely immune" from suit.).

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 85, 90, 92), and mail a copy of this Opinion & Order to Plaintiff.

The Court will hold a status conference for the remaining Parties (Plaintiff and Scully) on June 9, 2020 at 11:30 a.m.

SO ORDERED.
DATED:     May 19, 2020
           White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE